**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 11, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DEIONE M. SMITH, also known as
Deione M. Burt, also known as Deione
M. Burt-Smith,

Defendant - Appellant.

No. 06-3239

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D. Ct. No. 03-CR-20036-JWL)**

---

Justin W. Howard, Shook, Hardy & Bacon, L.L.P., Kansas City, Missouri,
appearing for Defendant-Appellant.

Brent I. Anderson, Assistant United States Attorney, Office of the United States
Attorney for the District of Kansas, Wichita, Kansas (Eric F. Melgren, United
States Attorney, and Terra D. Morehead, Assistant United States Attorney, Office
of the United States Attorney for the District of Kansas, Kansas City, Kansas, on
the brief), appearing for Plaintiff-Appellee.

---

Before **TACHA**, Chief Circuit Judge, **BALDOCK**, and **TYMKOVICH**, Circuit
Judges.

---

**TACHA**, Chief Circuit Judge.

Pursuant to a plea agreement, Defendant-Appellant Deione Smith pleaded guilty to one count of possession with intent to distribute five grams or more of crack cocaine, a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). In her plea agreement, Ms. Smith waived her right to appeal her sentence. The District Court sentenced Ms. Smith to 151 months' imprisonment after (1) rejecting her request for safety valve consideration under § 5C1.2(a)(2) of the United States Sentencing Guidelines Manual ("Guidelines" or "U.S.S.G."), (2) applying upward adjustments to her offense level under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm and under U.S.S.G. § 3C1.1 for obstruction of justice, and (3) refusing to reduce her offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. Ms. Smith timely appeals her sentence. We exercise jurisdiction under 18 U.S.C. §§ 1291 and 3742(a). *See United States v. Hahn*, 359 F.3d 1315, 1324 (10th Cir. 2004) (en banc) ("[T]his court has both statutory and constitutional subject matter jurisdiction over appeals when a criminal defendant has waived his appellate rights in an enforceable plea agreement."). Because we conclude that the plea agreement constitutes an enforceable waiver of appellate rights, we dismiss Ms. Smith's appeal without addressing the District Court's application of the Guidelines adjustments.

## I. BACKGROUND

On January 4, 2006, the Government filed a superseding indictment

charging Ms. Smith with six drug-related offenses. Ms. Smith agreed to plead guilty to one charge of possession with intent to distribute crack cocaine in exchange for a dismissal of the remaining counts. The Government agreed to recommend that Ms. Smith receive a two-level reduction in the applicable offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility, contingent upon her continuing manifestation of such acceptance. The plea agreement states that Ms. Smith "knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence." It further provides that "the defendant waives the right to appeal the sentence imposed in this case except, to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court."

Following acceptance of Ms. Smith's guilty plea, the District Court ordered preparation of a presentence report ("PSR"). The PSR recommended a two-level upward adjustment under U.S.S.G. § 2D1.1(b)(1) for possession of firearms in connection with the offense and a two-level downward adjustment for acceptance of responsibility under § 3E1.1(a). The PSR determined Ms. Smith was not eligible for safety valve consideration under U.S.S.G. § 5C1.2(a)(2)—which renders the statutory minimum sentence for certain offenses inapplicable if the defendant did not possess a firearm in connection with the offense—due to her possession of firearms. With a resulting offense level of 30 and a criminal history category of I, the PSR provided for a range of imprisonment of 97 to 121 months.

In response to the PSR, Ms. Smith filed a "Sentencing Memorandum" arguing that she should receive safety valve consideration because there was no proof that firearms found in her home were used "in connection with" the drug offense for which she was convicted. The Government argued that Ms. Smith possessed one firearm in connection with the drug transaction because the gun was recovered from a bedroom where officers also recovered thousands of dollars in cash. But Ms. Smith insisted that the cash was from the recent sale of her car. To support this contention, Ms. Smith submitted an "Affidavit of Bill of Sale," representing that Ms. Smith sold the car for a specific sum to the buyer. Following an evidentiary hearing, the District Court determined that the "affidavit" was fraudulent. Consequently, the court concluded that Ms. Smith was not eligible for the safety valve adjustment. It also determined that, because of her fraudulent submission, she was not eligible for the downward adjustment for acceptance of responsibility and that a two-level upward adjustment under U.S.S.G. § 3C1.1 for obstruction of justice was warranted. This resulted in an offense level of 34, a criminal history category of I, and a sentencing range of 151 to 188 months' imprisonment. The court sentenced Ms. Smith to 151 months.

Ms. Smith appeals her sentence, arguing that the plea agreement is not enforceable. First, she argues that she did not knowingly and voluntarily waive the right to appeal her sentence and therefore she can appeal the District Court's application of the Guidelines adjustments to her offense level. Second, in the

alternative, she insists that the District Court rejected the plea agreement by imposing an offense level adjustment not contemplated therein—the obstruction of justice enhancement—and she must therefore have the opportunity to withdraw her plea.

## II. DISCUSSION

### A. Waiver of the Right to Appeal the Sentence

A defendant may not appeal her sentence if she has waived her appellate rights in an enforceable plea agreement.[1] This Court employs a three-pronged analysis to determine whether to enforce a waiver of appellate rights. *Hahn*, 359 F.3d at 1325. We examine "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." *Id.*

#### 1. Scope of the Waiver

The plea agreement provides: "[T]he defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs

---

[1]Ms. Smith argues that the waiver is unenforceable because the Government failed to file a "Motion for Enforcement of the Plea Agreement" as required by *Hahn*, 359 F.3d at 1328. We have made clear, however, that the government preserves its right to enforce a plea agreement when it files a motion to enforce the agreement *or* seeks enforcement in its brief. *United States v. Contreras-Ramos*, 457 F.3d 1144, 1145 (10th Cir. 2006) ("The preferred procedure for invocation of an appeal waiver is for the government to file a motion under Tenth Circuit Rule 27.2(A)(1), or to argue the waiver issue in its brief.").

upwards from the applicable sentencing guideline range determined by the court." This waiver encompasses all appellate challenges to the sentence other than those falling within the explicit exception for challenges to upward departures. The District Court sentenced Ms. Smith within the advisory Guidelines range it calculated; it did not depart upward. Thus, Ms. Smith's challenges to the District Court's application of the offense-level adjustments clearly fall within the scope of the waiver.

Ms. Smith insists, however, that her appeal falls outside the scope of the waiver because the District Court relied on facts derived from the sentencing hearing to determine the applicability of the offense-level adjustments. According to Ms. Smith, the court should have relied solely on the stipulated facts in the plea agreement—those facts within the "scope" of the agreement. There is no basis in the law for this argument. A sentencing court may find facts for sentencing purposes by a preponderance of the evidence, *see United States v. Magallanez*, 408 F.3d 672, 684–85 (10th Cir. 2005), and the plea agreement explicitly provides that "[t]he defendant . . . agrees that facts that determine the offense level will be found by the Court at sentencing by a preponderance of the evidence and agrees that the Court may consider any reliable evidence, including hearsay."

*2. Knowing and Voluntary Waiver*

The defendant bears the burden to demonstrate that her waiver was not

knowing and voluntary. *United States v. Edgar*, 348 F.3d 867, 872–73 (10th Cir. 2003). Under *Hahn*, this Court looks primarily to two factors to assess the voluntariness of a defendant's waiver. We "examine whether the language of the plea agreement states that the defendant entered the plea agreement knowingly and voluntarily." *Hahn*, 359 F.3d at 1324. There is no dispute that this condition is satisfied here. We also "look for an adequate Federal Rule of Criminal Procedure 11 colloquy." *Id.* at 1325. The District Court questioned Ms. Smith extensively at the plea hearing, establishing that she was competent to enter the plea and understood all of the terms of the agreement. The court specifically discussed the wavier of her appellate rights, *see* Fed. R. Crim. P. 11(b)(1)(N), and Ms. Smith affirmatively acknowledged that she understood that waiver.

Yet Ms. Smith argues that her waiver was not knowing and voluntary because, at the end of the plea hearing, the District Court indicated that she retained her appellate rights. Indeed, after completing the Rule 11 colloquy and accepting Ms. Smith's guilty plea, the court stated: "[P]ursuant to Rule 32(j) of the Federal Rules of Criminal Procedure, the defendant has the right to appeal the sentence." But a district court's statement that a defendant has the right to appeal does not necessarily negate a waiver-of-appeal provision contained in a plea agreement when the defendant enters into that agreement prior to the court's statement. *See United States v. Atterberry*, 144 F.3d 1299, 1301 (10th Cir. 1998) (explaining that a district court's oral advisement of appellate rights following a

defendant's written waiver "do[es] not affect a defendant's *prior* decision to plead guilty and waive appellate rights" (emphasis added)). This is especially true when, after informing the defendant that he has appellate rights, the court does not ask defendant whether he understands the description of those rights. *See id.* (explaining that sentencing court's statement that the parties could appeal the sentence did not invalidate defendant's waiver of appellate rights because, in part, "the court did not query the defendant as to whether he understood its description of his appeal rights").

Here, the District Court conducted a complete Rule 11 colloquy, specifically explaining to Ms. Smith that she would be waiving her right to appeal and to collaterally attack her conviction and sentence if she accepted the plea agreement. Ms. Smith said that she understood these terms. The prosecutor also outlined the provisions of the plea agreement in court, stating: "[Ms. Smith] also waives any appeal rights or collateral attack rights except those as specified in the plea agreement." Ms. Smith, her attorney, and the prosecutor then signed the agreement. It was not until the next day, at the very end of the sentencing hearing—following the Rule 11 colloquy, her acceptance of the plea agreement, and a full evidentiary hearing regarding application of the safety valve provision—that the District Court judge informed Ms. Smith, apparently as a matter of routine, that she had a right to appeal the sentence. The court did not ask Ms. Smith whether she understood this statement, as it had done previously

for the waiver of her appellate rights. For these reasons, the court's statement did not negate Ms. Smith's prior written waiver of her appellate rights.[2]

In addition, the court's statement may even have been consistent with the plea agreement. Pursuant to the agreement, Ms. Smith retained the right to appeal her sentence if the District Court sentenced her outside the advisory Guidelines range or if the United States exercised its right to appeal the sentence under 18 U.S.C. § 3742(b). Thus, the District Court's comment may only have been intended to inform Ms. Smith of her right to appeal as limited by the waiver. *See* Fed. R. Crim. P. 32(j) (requiring sentencing court to inform defendant of "*any* right to appeal the sentence" (emphasis added)); *Atterberry*, 144 F.3d at 1301 (noting that a court's general advisement of a right to appeal may be consistent with a plea agreement's conditional waiver of direct appeal).

Although, in this case, the District Court's routine recitation of appellate rights does not render Ms. Smith's waiver invalid, we acknowledge that such instructions may have the potential to render appellate waivers invalid under different circumstances, such as when the instructions are inconsistent with the defendant's rights or when the district court's statement has the serious potential

_____

[2]Also for these reasons, our recent opinion in *United States v. Wilken*, — F.3d —, 2007 WL 2372381 (10th Cir. 2007), is distinguishable. *See id.* at *5–6 (holding defendant's waiver of appellate rights was not knowing and voluntary because sentencing court's mischaracterization of defendant's appellate waiver during plea colloquy, *prior* to signing of plea agreement, created a material ambiguity as to otherwise unambiguous written waiver in the plea agreement).

to confuse the defendant. We therefore provide the following guidance regarding a district court's obligation to inform the defendant of his appellate rights after accepting a plea agreement containing a waiver of appellate rights.

Rule 32(j) provides that "[a]fter sentencing—regardless of the defendant's plea—the court must advise the defendant of *any* right to appeal the sentence." Fed. R. Crim. P. 32(j)(1)(B) (emphasis added). The clear import of this rule is that advice as to a right to appeal a sentence need be given only when such a right exists. *See also United States v. Tang*, 214 F.3d 365, 368–71 (2d Cir. 2000) (interpreting prior version of Rule 32). When a defendant waives certain appellate rights in a plea agreement, the district court need not, and should not, inform him that he retains such rights by, for example, making a blanket statement that the defendant has a right to appeal. Instead, the district court should inform the defendant that he has a right to appeal the sentence only to the extent that the defendant has not waived that right in the plea agreement. Such a statement, in conjunction, of course, with the court's confirmation that the defendant entered into the plea agreement knowingly and voluntarily through a complete Rule 11 colloquy, should ensure both that the defendant understands his rights and that the waiver is enforceable.

### 3. *Miscarriage of Justice*

The third prong of the enforcement analysis requires the court to determine whether enforcing the waiver will result in a miscarriage of justice. A

miscarriage of justice occurs "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." *Hahn*, 359 F.3d at 1327 (alteration in original) (quoting *United States v. Elliot*, 264 F.3d 1171, 1173 (10th Cir. 2001)). Ms. Smith argues only that the waiver is "otherwise unlawful." To be "otherwise unlawful," an error must "'seriously affect[] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)).

Ms. Smith argues that the District Court "unjustifiably" concluded that she obstructed justice, and that this erroneous ruling resulted in an upward adjustment to her sentence and the court's improper refusal to apply the acceptance of responsibility adjustment. These errors, she claims, affect the fairness of the proceedings, as well as the integrity and public reputation of the judicial system. Ms. Smith misunderstands the miscarriage of justice exception to enforcement of a waiver of appellate rights. This exception looks to whether "the *waiver* is otherwise unlawful," *id.* (emphasis added), not to whether another aspect of the proceeding may have involved legal error. Ms. Smith's argument that alleged errors in the court's determination of her sentence should invalidate her appellate waiver illustrates what *Hahn* called "the logical failing[ ] of focusing on the result

-11-

of the proceeding, rather than on the right relinquished, in analyzing whether an appeal waiver is [valid]." *Id.* at 1326 n.12 (discussing whether an appeal waiver was knowing and voluntary); *see also, e.g.*, *United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999) ("A waiver of the right to appeal . . . includes a waiver of the right to appeal blatant error."). To allow alleged errors in computing a defendant's sentence to render a waiver unlawful would nullify the waiver based on the very sort of claim it was intended to waive.

In sum, because Ms. Smith knowingly and voluntarily entered into the plea agreement containing a waiver of appellate rights, because the alleged errors are within the scope of the waiver, and because enforcement of the waiver would not result in a miscarriage of justice, we conclude that Ms. Smith's plea agreement, and the appellate waiver contained therein, is enforceable.

B. District Court's Acceptance of the Plea Agreement

Ms. Smith argues that the District Court "constructively rejected" the plea agreement when it imposed the two-level upward adjustment for obstruction of justice under U.S.S.G. § 3C1.1 because the plea agreement did not provide notice that she may be subject to the adjustment. Consequently, she argues, the court was required to give her an opportunity to withdraw the plea before sentencing; because the court did not, the plea agreement is unenforceable. Ms. Smith's argument is inapposite. The Federal Rules of Criminal Procedure draw a distinction between those plea agreements that state that a specific sentence or

sentencing range is appropriate or that certain provisions of the Guidelines will or will not apply, and those agreements that do not. Specifically, a statement in a plea agreement "that a particular provision of the Sentencing Guidelines . . . does or does not apply" binds the court once it accepts the plea agreement. Fed. R. Crim. P. 11(c)(1)(C). In contrast, a plea agreement that does not so specify does not bind the district court to any particular sentencing range or recommendation. *United States v. Herula*, 464 F.3d 1132, 1138 (10th Cir. 2006) (citing Fed. R. Crim. P. 11(c)(1)(B)).

The plea agreement here does not specify a particular sentencing range, nor does it specify that certain Guidelines adjustments are or are not applicable. In fact, the plea agreement specifically recognizes that "the sentence to be imposed will be determined solely by the United States District Judge" and that "[t]he defendant understands that if the court accepts this plea agreement but imposes a sentence with which the defendant does not agree, the defendant will not be permitted to withdraw this plea of guilty." As such, the District Court's application of the obstruction of justice adjustment does not operate as a rejection of the plea agreement, nor was the court required to give Ms. Smith an opportunity to withdraw her guilty plea because it applied an adjustment not specifically contemplated by the plea agreement.[3]

_____

[3]We note that the District Court did not expressly state on the record that it was "accepting" or "rejecting" the plea agreement. The court did, however,

(continued...)

-13-

Moreover, Ms. Smith's argument assumes the plea agreement must provide notice of every potential sentencing outcome before it can be enforceable. But we have explicitly rejected the "notion that a defendant must know with specificity what result he forfeits before his waiver is valid." *Hahn*, 359 F.3d at 1326–27 (citing *United States v. Ruiz*, 536 U.S. 622, 629–30 (2002)); *see also United States v. Montano*, 472 F.3d 1202, 1205 (10th Cir. 2007) (citing cases and expressly declining to adopt a rule that an appeal waiver is unenforceable when defendant did not know at the time she entered the plea agreement what her sentencing range would be and that the resulting sentence was greater than anticipated).

## III. CONCLUSION

For the foregoing reasons, we **ENFORCE** Ms. Smith's waiver of appellate rights and **DISMISS** her appeal.

---

[3](...continued)
operate within the terms of the plea agreement, questioning Ms. Smith with respect to its terms during the Rule 11 colloquy and dismissing, as provided in the plea agreement, the five other counts set forth in the superseding indictment. These actions amount to constructive acceptance of the plea agreement. *See United States v. Skidmore*, 998 F.2d 372, 375 (6th Cir. 1993) (holding that a district court's failure to expressly accept or reject a plea agreement amounted to acceptance of the agreement if the court accepts the guilty plea).

-14-